# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| MARIO ROQUE,<br><br>    Petitioner,<br><br>vs.<br><br>JOHN AULT,<br><br>    Respondent. | No. C06-0128-MWB<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

_____

This is a report and recommendation on an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by the petitioner Mario Roque ("Roque") against the respondent John Ault ("Ault"), warden of the Anamosa State Penitentiary ("ASP"). Doc. No. 3. The court granted Roque's request for evidentiary hearing, *see* Doc. No. 29, and an evidentiary hearing was held on June 12, 2008, at ASP. *See* Doc. No. 36, Transcript. Both parties have filed post-hearing briefs. Doc. Nos. 39 & 40. The matter now is fully submitted.

The petitioner is represented in these proceedings by attorney Philip B. Mears, and the respondent is represented by Iowa Assistant Attorney General William A. Hill

## *FACTUAL AND PROCEDURAL BACKGROUND*

Roque was born in Mexico in 1974, and moved to the United States in 1982, when he was eight years old. He has remained in the United States since that time. He did not go to school in this country, but worked in restaurants, picking watermelons, and picking metal up off the streets. In 1995, he entered the Iowa state prison system, where he remains. He was an inmate at ASP during 2004 and 2005, when the events giving rise to this application occurred. Roque was 34 years old at the time of the evidentiary hearing in 2008.

This case concerns two prison disciplinary actions against Roque at ASP. The first concerned an allegation that Roque flushed a piece of paper down a toilet when he was told to hand it to a correctional officer. The second concerned an allegation that Roque verbally abused a correctional officer, and then threw liquid in her face. Roque was convicted of violating prison rules in connection with both incidents, and he received sanctions which included a loss of earned time.

Roque makes two claims in connection with the disciplinary proceeding. First, he claims he was denied staff assistance in connection with the disciplinary actions, as required by *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), so the prison discipline should be vacated. *See* Doc. No. 39, pp. 15-20. Second, he claims the state postconviction proceedings were so unfair that this court should resolve this case *de novo*, without deference to the state court determination. *Id.*, pp. 20-25.

The first incident occurred on November 30, 2004. According to a Disciplinary Notice, a correctional officer observed Roque receiving a folded piece of paper from someone in an adjoining cell. The officer told Roque to give her the piece of paper. According to the officer, Roque "stepped back to the toilet area, looking straight at [her], tore up the paper and flushed it down the toilet. While he was doing this he smiled and moved his head from side to side as if he was saying no." State's Ex. A, p. 2. Another witness gave a statement that the inmate was not actually handing the piece of paper to Roque, but was "trying to push [Roque] a piece of paper that [had fallen] out of [Roque's] cell." *Id.*, p. 4.

On December 9, 2004, a hearing on the disciplinary notice was held before Administrative Law Judge William Soupene. *Id.*, p. 5. Roque did not deny he had refused to give the piece of paper to the officer. He testified, "It was a drawing. [The officer] said, 'Give it here.' I said, 'It's just a drawing' and flushed it." The ALJ found Roque had committed a Class C violation, and assessed a loss of 25 days of earned time. Roque requested mitigation of the sentence, but the ALJ denied the request. Roque then

became disruptive and verbally abusive. *Id*. Roque appealed to Ault, claiming the penalty imposed on him was harsher than the penalty the ALJ had imposed on another inmate. Roque argued this proved the ALJ was a racist. *Id*., p. 6. Ault affirmed the ALJ's decision, finding Roque's appeal rights were being restricted because he had been disruptive and verbally abusive at the hearing. *Id*., p. 7.

The second incident occurred on February 6, 2005. According to a Disciplinary Notice, a female correctional officer heard an inmate yelling from a cell area that there was a female on the range. She then heard the same inmate yell, "Here Kitty, Kitty," several times. State's Ex. A-2, p. 2. The officer decided the voice was coming from Roque's cell. She advised Roque that he was on report for what he had said. As the officer started to leave, Roque yelled, "Fat ass Bitch!" and "Smelly Cunt!" He continued to yell louder, and hit his cell walls. The officer told him to calm down, but Roque continued yelling at her. As the officer unsnapped her mace case, Roque got a cup of water from his toilet and threw it in her face. The officer responded by spraying Roque with a short burst of mace, but Roque continued scooping water out of the toilet and throwing it at her. She told him to stop, but he continued to throw water at her, so she sprayed him with mace a second time. He then stopped. *Id*. After the incident, Roque was placed in administrative segregation, where he told officers he wanted to die.

On February 8, 2005, a hearing on the disciplinary notice was held before ALJ Soupene. *Id*., p. 30. At the hearing, Roque testified, "She accused me of something I didn't do so I got pissed off and threw a glass of water. I only called her a liar bitch. She was making fun of me. She will not make friends with inmates, that's unprofessional. She said I would be in the screened cell forever." The ALJ found Roque had committed a Class B and several Class C violations, and assessed a loss of 90 days of earned time. The ALJ advised Roque there was a possibility that he also would be prosecuted criminally for his actions, and Roque responded that he understood. *Id*. Roque appealed to Ault, denying that he had yelled at the officer when she was on the range, and disputing many

of the ALJ's other factual findings. In his appeal, Roque called the ALJ a liar, and stated, "I wanna you [to] check in[to] this because I don't star[t] this shit." *Id*., pp. 32-33. Ault affirmed the ALJ's decision. *Id*., p. 34. Roque submitted a "supplemental appeal" to Ault on February 14, 2005, *id*., p. 35, which Ault denied, *id*., p. 36.

Roque filed postconviction claims in the Iowa District for Jones County challenging both disciplinary actions. He claimed that the decision on the first disciplinary notice was improper because it was based on racial discrimination and because he was not provided with an interpreter. He also claimed the punishment was too harsh. With regard to the second disciplinary notice, he claimed he was denied the right to obtain statements from witnesses and to call witnesses to testify at the hearing. He also again claimed he was not provided with an interpreter.

On September 23, 2005, a hearing on Roque's postconviction claims commenced before Judge David Remley, but the judge recessed the hearing shortly after it began, stating the following:

> The applicant was sworn and began his testimony. Shortly after the Applicant began his testimony it became apparent that I could not understand everything the Applicant was saying, nor could the court reporter. The extent of our ability to understand the Applicant is such that it is not feasible to stop the Applicant's testimony each instance that he cannot be understood and ask him to repeat it. In addition, the Applicant asserted that he could not understand everything that I said to him. The Applicant requests an interpreter.
>
> I conclude that this applicant cannot receive a fair hearing unless he has an interpreter. Therefore this hearing must be reset. . . . Court administrator shall make arrangements for a Spanish-speaking interpreter to assist the Applicant. The interpreter shall be personally present with the Applicant at the Anamosa State Penitentiary at the time of the hearing.

On October 28, 2005, the postconviction claims were tried before Judge Kristin Hibbs. At the hearing, Roque had the assistance of an interpreter.[1] In his testimony, Roque complained that he did not have the assistance of an interpreter at the two disciplinary hearings. *See* Transcript of hearing in *Roque v. State*, No. PCCV 332, Johnson County, Iowa, District Court ("PCR Tr."), pp. 19-20. He testified that the ALJ "was very harsh to him because he is a Mexican." *Id.*, p. 21. He stated the ALJ "hates the prisoner with passion," and "is a racist." *Id.*, p. 23. After the PCR judge attempted several times to get Roque to stop rambling and to address his claims, the following exchange occurred:

> Q. [By the State's Attorney]: The statement, quote, she accused me of something I didn't do, so I got pissed off and threw a glass of water. I only called her a liar bitch.
>
> Interpreter: Yes. He is just saying that you need to read the whole thing.
>
> Q. And do you agree that that is part of the statement that you made to [the ALJ] at the disciplinary hearing on February 8, 2005?
>
> (Applicant speaking.)
>
> THE COURT: Mr. Roque, please. You have to do the same thing that I ask the State to do. Break down your comments so that they can be translated bit by bit.
>
> APPLICANT [Roque]: Hold it, hold it, let me finish.
>
> THE COURT: Stop.
>
> (Interpreter speaking to Applicant.)
>
> THE COURT: Stop, sir.
>
> INTERPRETER: No, ignore it.

---

[1] The transcript of the hearing is difficult to follow because the interpreter translated Roque's statements in the third person, and sometimes Roque spoke directly in English.

5

APPLICANT: No, no, no, fuck the stinking bitch, man. Man, she don't want to hear the fucking shit. Stupid bitch.

INTERPRETER: Sit Down.

THE COURT: Sir, we're trying to get this translated.

APPLICANT: Yeah, but look, she don't want to read all the fucking shit. What the fuck she only want to read half. The fucking bitch and the fucking shit over here and she only want to read what – fuck the stinking bitch. What the fuck we have here. Come on, she need to read all the shit because --

THE COURT: Mr. Roque --

APPLICANT: It be lie, lie, man. You have to understand she lie. What the fuck.

THE COURT: Mr. Roque, you will either conduct yourself in an orderly manner or we are done.

(Applicant speaking; Interpreter speaking.)

THE COURT: Do you understand?

APPLICANT: No, no, look.

INTERPRETER: I'm going to translate, Your Honor.

APPLICANT: No, no, look.

(Interpreter translates.)

APPLICANT: No, no, let me – no, no.

(Applicant speaking.)

APPLICANT: -- making me feel bad, she can read the whole – she supposed to read the whole thing because they've been changing the fucking story. That's why --

THE COURT: Mr. Roque. Mr. Roque. This is a court proceeding. You will conduct yourself accordingly. It's not your turn. The document is in evidence, the whole document. Settle down.

*Id.*, pp. 32-35.

On November 4, 2005, Judge Hibbs entered an order denying Roque's claims. Regarding the first claim, Judge Hibbs held Roque "admitted that he had a piece of paper, that it was requested by a correctional officer, and that instead of giving it to the correctional officer, [he] flushed it. [He] further admitted that he had to be removed from the [administrative] hearing because of his disruptive behavior." With regard to the second claim, Judge Hibbs held as follows:

> In this incident the inmate is accused of referring to a woman correctional officer as a "fat ass bitch, a liar bitch," of retrieving water from his toilet and throwing it on the officer. The inmate continued to throw water even after being maced. At the hearing it is reported that the inmate acknowledged that he "only called her a liar bitch" and "She accused me of something I didn't do so I got pissed off and threw a glass of water." The inmate continued, "She was making fun of me. She will not make friends with inmates, that's unprofessional. She said I would be in the screen cell forever."
>
> At the trial on these Applications for Post Conviction Relief, Applicant Roque, when frustrated by what he perceived as being an incomplete recitation of his earlier statement, became disruptive and referred to the Court and/or the prosecutor as "fucking bitches." He later apologized.
>
> The court has no difficulty believing that this inmate was verbally abusive and referred to the female correctional officer by that insulting epithet or that he was disruptive, that he disobeyed an order, and threw water on the correctional officers. The Court finds there is no basis for his challenge that the decision holding him accountable was made based on race or because he did not have an interpreter. Although he reports that his violations are based on lies, he showed through his behavior and through his admissions that, indeed, he did violate those rules.

*Roque v. State*, No. PCCV 332, Johnson County, Iowa, District Court, Order of November 4, 2005; Doc. No.8-3, pp. 7-8. Roque filed a *pro se* Notice of Appeal. *See* Doc. No. 8-3, p. 10. The State filed a motion to dismiss, arguing Roque had failed to

follow the proper procedure because "[a]ppeals of actions brought pursuant to Iowa Code Section 822.2(6) must be by Writ of Certiorari. Iowa Code Section 822.9." Doc. No. 8-3, p. 13, ¶ 4(a). In the alternative, the State argued that if the Iowa Supreme Court deemed Roque's *pro se* "Notice of Appeal" to be a petition for writ of certiorari under the Iowa statute, then Roque's petition should be denied on the merits. *Id.*, p. 14. The court extended the time for Roque to file a resistance to the State's motion to dismiss, but he failed to do so. On July 3, 2006, the Iowa Supreme Court considered Roque's appeal as a petition for writ of certiorari, and denied the writ. *Id.*, p. 18.

Roque filed the instant case on September 15, 2006. In his petition, Roque asserted three grounds for relief: (1) he is illiterate in English and he was denied staff assistance in connection with the disciplinary proceedings; (2) his due process and equal protection rights were violated during the disciplinary proceedings because he was refused staff assistance on the basis of his Hispanic ethnicity; and (3) he was denied access to the courts because of his illiteracy. Doc. No. 3, ¶ 12. All three of these claims basically relate to the same claim; i.e., that Roque should have been provided with an interpreter and/or other staff assistance in defending himself in the disciplinary proceedings.

The evidentiary hearing before this court was held with the assistance of a federally certified interpreter. Six exhibits were admitted into evidence, to-wit: **Pet. Ex. 1** - IMCC Progress Notes for Mario Roque (4 pages), *see* Doc. No. 240-2, pp. 1-4; **Pet. Ex. 2** - "Adjustment Committee" docket sheets dated December 9, 2004, and February 8, 2005 (2 pages); **Pet. Ex. 3** - "Defendants' Answer to Plaintiff's First Set of Interrogatories," dated February 15, 2008 (25 pages); **Res. Ex. A** - Disciplinary packet dated December 9, 2004 (7 pags); **Res. Ex. A-2** - Disciplinary packet dated February 8, 2005 (36 pages); **Res. Ex. C** - State of Iowa Department of Corrections "Disciplinary Policy and Procedure" dated March 2004 (32 pages).

Regarding the first incident, Roque testified that he understood the officer had asked for the piece of paper. He testified, "The paper was something legal and confidential, so

I refused to give it to [her]." Doc. No. 36-2, p. 20.[2] He stated, "The officer wanted me to give it to her and if I didn't give it to her, she was going to check my room, so what I did was I tore it up and I threw it into the toilet." *Id*. Later, he testified, "The officer said it was a piece of paper and that the piece of paper was contraband. The reality was that it was legal paper and I was asking another prisoner for his opinion in order to be able to write it correctly." *Id*., p. 22. Roque later testified that if the paper had been a drawing or picture, he would have given it to the officer. *Id*., p. 31. Regarding his claim that the ALJ was racist, Roque testified, "At the same time, there was another prisoner who went to the same court and that was over something about a watch and a $10 bill, but that guy just received a minor report and I got a major one. And that's where I came to the conclusion that Mr. Soupene was a racist. It's something I can't prove, but what other conclusion could I come to?" *Id*., p. 23.

Regarding the second incident, Roque denied he was the inmate who had yelled at the female officer. *Id*., p. 24. He admitted he became angry when he was falsely accused of this, and that he then had called the officer names, although he denied using the words the officer said he had used. *Id*., pp. 24-25. He also admitted he had thrown water at the officer, but stated he had done so only after she had sprayed him with mace repeatedly. *Id*., pp. 27-28.

In Roque's post-hearing brief, he argues he was entitled to staff assistance in the two disciplinary proceedings for two reasons; i.e., his illiteracy in the English language and his mental health difficulties. He further argues this court "should find that the State court proceeding, where Mr. Roque had to present his case without assistance, was unfair and entitled to no deference." Doc. No. 39, p. 25. He therefore argues this court should conduct a *de novo* review of his claims. *Id*., pp. 20-25.

---

[2]Citations to the evidentiary hearing transcript are to the pagination added by the court's ECF system, not to the transcript pages themselves.

9

Ault argues Roque was not entitled to staff assistance in the disciplinary proceedings either due to his lack of English language skills or to any issues related to his mental competency. Ault asserts that a review of the factual and legal background of Roque's claims establishes that a writ of habeas corpus should not be granted. *See* Doc. No. 40.

## *ANALYSIS*

Preliminarily, it should be noted that in granting Roque's request for an evidentiary hearing, the court did not perform an analysis under *Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), *overruled and modified in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992).

Ordinarily, a federal court holds an evidentiary hearing when the state trier of fact failed to afford the petitioner a full and fair fact hearing. The district court has the discretion to hold an evidentiary hearing. *See Keeney*, 504 U.S. at 23, 112 S. Ct. at 1727. In this case, Roque requested an evidentiary hearing, and Ault did not object. Under those circumstances, the undersigned deemed it advantageous to the district court to conduct an evidentiary hearing for purposes of presenting a full and complete record to the reviewing judge. The grant of an evidentiary hearing did not encompass a finding under *Townsend* that the state triers of fact had failed to afford Roque a full and fair hearing.

A statutory presumption of correctness applies to state court findings of fact. A petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Barnett v. Roper*, 541 F.3d 804, 811 (8th Cir. 2008). The undersigned finds Roque failed to meet this burden. Indeed, his testimony at the evidentiary hearing supported the factual findings of the PCR court and the ALJ in the prison disciplinary proceedings. The court therefore will defer to the state court's factual findings. Notably, however, even if the court were to perform a *de novo* review of the record, the undersigned would reach the same conclusions as did the state court.

In order to prevail on his application, Roque must show the state court's adjudication of his claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Roque has failed to meet either of these standards for relief.

The first incident involved Roque's refusal to obey an order from an officer to hand over a piece of paper Roque had in his cell. Instead, Roque tore the paper up, and flushed it down the toilet. Roque admits to this conduct, but explains his refusal to turn over the piece of paper by claiming it was a confidential legal paper. He also claims that he asked for an an interpreter at the disciplinary hearing, but that this request was denied.

The court does not believe Roque's claim that the piece of paper was a confidential legal document. At the prison disciplinary hearing, Roque stated the paper contained a drawing or picture. He made no claim it was a legal paper. Similarly, in his appeal to Ault, he made no claim that this was a legal paper. In fact, this contention was not asserted in Roque's state postconviction claim, his petition in this federal action, Doc. No. 3, or in his pre-hearing brief, Doc. No. 24-3. As far as the court can tell, this position was first asserted by Roque during his testimony before this court. The court finds Roque's testimony was not truthful. However, even if the paper had contained confidential legal information, no law has been cited to the court that would justify Roque's refusal to obey the officer's order to give her the paper.

The court also finds Roque did not request an interpreter at the hearing on the first disciplinary complaint, or at the hearing on the second disciplinary complaint, and there is nothing in the record to suggest the ALJ should have known that Roque wanted or needed an interpreter.

In *Gonzales-Perez v. Harper*, 241 F.3d 633 (8th Cir. 2001), the court held:

> "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556, 94 S. Ct. 2963. Even in a full-fledged criminal trial, a defendant's procedural due process rights are not violated by the failure of the state to appoint an interpreter if the defendant does not request an interpreter and the state is not otherwise put on notice of a significant language barrier. *Luna v. Black*, 772 F.2d 448, 451 (8th Cir.1985) (holding that the district court did not abuse its discretion by not appointing an interpreter where the record indicated that the defendant could communicate in English and the defendant had not requested an interpreter).

*Id*. at 637; *United States v. Khehra*, 296 F.3d 1027, 1030 (8th Cir. 2005) ("The appointment of an interpreter is placed squarely within the court's discretion.").

Roque came to the United State when he was eight years old, and he has lived here for the past twenty-seven years. He has been in the Iowa state prison system for the past fourteen years. While it is entirely possible for an immigrant to live in the United States and not learn English, that is not what happened here. The court finds Roque has demonstrated that he has an adequate understanding of the English language. Before these two incidents, Roque attended numerous prison disciplinary hearings and never requested an interpreter. He saw a consulting psychiatrist at the prison, and when he was offered an interpreter, he declined the offer. Doc. No. 36-2, p. 20. Roque has prepared paperwork in English on numerous prison matters, and communicated with prison staff in English. In fact, while testifying at the hearing in this court, Roque regularly started answering questions directed at him before the questions were even translated. At the state PCR hearing, he demonstrated that even when an interpreter is available, he is capable of expressing himself in colorful, if inappropriate, English.

With respect to the second violation, the court simply does not believe Roque's claim that the officer sprayed him with mace before he threw water from a toilet in her face. Again, this claim was first asserted at the hearing before this court, and not in any

previous documents or testimony. When he testified at the prison hearing, Roque said the officer "accused me of something I didn't do so I got pissed off and threw a glass of water." He made no mention of throwing water either to protect himself or to retaliate against being sprayed with mace. The court finds Roque assaulted the officer by throwing water in her face, he did so without any legal justification, and the discipline imposed for this conduct was entirely appropriate.

Roque argues that a counsel substitute pursuant to *Wolff* might have made a difference in these disciplinary matters, either in assisting him in presenting a defense or in arguing mitigation. Doc. No. 39, p. 20. He contends that because of the failure of the ALJ to provide Roque with counsel substitute, "This Court should conclude that there was a constitutional violation and enough of a showing of possible prejudice, to merit this Court vacating the discipline." *Id*. The court disagrees.

In *Wolff*, the Supreme Court held:

> Where an illiterate inmate is involved . . ., or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

*Wolff*, 418 U.S. at 570, 94 S. Ct. at 2982. In *Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996), the court commented on the holding in *Wolff*, noting "the Supreme Court declined to recognize a general right of a prison inmate to have counsel substitute in disciplinary proceedings. . . . Indeed, counsel substitute is reserved for use with a small class of inmates." *Id*. (citation omitted).

Here, where Roque did not even request counsel substitute, and where the charges were straightforward and not complex, the failure of the ALJ to appoint a counsel substitute did not constitute constitutional error.

Roque has made no showing that the state court's decision was contrary to, or involved an unreasonable application of, any clearly established Federal law, not has he shown the state court's decision was based on an unreasonable determination of the facts in light of the evidence. Therefore, Roque's petition for writ of habeas corpus should fail.

## *CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[3] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that Roque's petition for writ of habeas corpus be denied.

**IT IS SO ORDERED.**

**DATED** this 14th day of January, 2009.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[3]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).